2 So.3d 280 (2007)
SCHOOL BOARD OF VOLUSIA COUNTY, Appellant,
v.
ACADEMIES OF EXCELLENCE, INC., etc., et al., Appellee.
No. 5D06-1054.
District Court of Appeal of Florida, Fifth District.
November 30, 2007.
*281 Theodore R. Doran, Audrie M. Harris and Michael Ciocchetti of Doran, Wolfe, Ansay & Kundid, Daytona Beach, for Appellant.
Christopher V. Carlyle, Shannon McLin Carlyle and Gilbert S. Goshorn, Jr., of The Carlyle Appellate Law Firm, The Villages, for Appellee.
PALMER, C.J.
The School Board of Volusia County (School Board) appeals the final order entered by the State of Florida, Department of Education (State Board), reversing the School Board's denial of the charter school application filed by Academies of Excellence, Inc. (Academies). Determining that the record contains competent, substantial evidence to support the State Board's decision, we affirm.
Academies applied to the School Board for permission to open a charter elementary school in Volusia County, Florida. Pertinent to this appeal, in the application the following information was set forth:
L. Student Performance Standards
* * *
4. To be considered as meeting student performance standards, students must perform at Level 3 and above on the mathematics and reading sections of the Florida Comprehensive Assessment Test.
5. Students who score at or above the 25th percentile on norm-referenced tests are considered to have demonstrated acceptable student performance standards.
Additionally, as part of the finance portion of the application, Academies indicated that it expected to initially enroll 450 students.
The School Board held a hearing to consider Academies' application. During the hearing, Dr. Chris Colwell, Deputy Superintendent for Instruction Services, testified that Academies' application failed to set a goal for itself of attaining an A, B, C, or D grade in terms of success of the school. He stated that a specific stated goal was required and appropriate. Next, Colwell took issue with Academies' standard that "students who score at or above the 25th percentile on norm reference tests are considered to have demonstrated acceptable student performance standards." He testified that the standard was lower than the standards held by public schools in Volusia County and lower than the standards that would be expected by the State of Florida.
Bill Kelly, Jr., Deputy Superintendent of Finance, opined that Academies' application lacked evidence of sound financial planning. Specifically, Kelly found Academies' enrollment projection of 450 students in the first year of operation to be unreasonable. Based on the unreasonable enrollment figure, Kelly stated that Academies' budget revenues were overstated. *282 Kelly also stated that Academies was understating its capital budget by one million dollars for facilities and land costs.
At the conclusion of the hearing, the School Board denied Academies' application. Specifically, the School Board concluded that Academies' application failed to meet the standards for minimal acceptance in the areas of student assessment/accountability and finance/class size requirements.
Academies appealed the School Board's ruling to the Charter School Appeals Commission. The Commission conducted a hearing on the matter. During that hearing, Kathleen Schoenberg, attorney for Academies, argued that Academies' application properly addressed the statutory requirement regarding student assessment and that the argument over finances was just a difference of opinion between the School Board and Academies.
Ted Doran, attorney for the School Board, argued that Academies had failed for the fourth time to produce an application sufficient statutorily to proceed to the next level. Dr. Colwell testified that Academies' failure to include a school goal in its application made Academies unaccountable for its performance under the Governor's A-Plus Plan. Further, Colwell stated that it was unacceptable that Academies considered the 25th percentile to be an acceptable level of student performance. However, he did indicate that Academies had admitted that this figure on their application was a typographical error and that the figure should have been 51st percentile instead of 25th percentile.
In response, Schoenberg stated that Academies mistakenly omitted a sentence stating that the school's goal was to be an "A" school. However, she argued that omission of that one sentence was not enough to make the entire application deficient.
The Commission asked the parties whether there was a specific requirement that a school grade be part of the application. Colwell admitted that the application template did not include such a requirement and Schoenberg stated that the statute does not require the school to include a school grade as one of its goals.
At the conclusion of the comments on student assessment/accountability, the Commission voted that the School Board had competent, substantial evidence to support its finding that the application was statutorily deficient in the area of student assessment/accountability. However, immediately thereafter, the Commission voted that the School Board's finding that the application was statutorily deficient in the area of student assessment/accountability was not good cause for denial.[1] After *283 more discussion, the Commission voted that the School Board did not have competent substantial evidence to support its finding that the application was statutorily deficient in the areas of finance/class size requirements. Subsequently, the Commission voted to grant Academies' appeal, thereby overturning the School Board's denial of Academies' application.
The School Board appealed that decision to the State Board. The State Board conducted a hearing during which it considered whether to accept the Commission's recommendation to overturn the decision of the School Board and to grant Academies' application. During the hearing, a member of the State Board requested clarification regarding the 25th percentile versus the 51st percentile. The head of the appeals commission responded:
I absolutely admonished the applicant that that's not acceptable. They had noted it. They admitted it. They said it was a typo. They absolutely agree on the record and in writing, it should be 51 percent which is the norm for the FCAT.
Subsequently, the State Board issued a written order upholding the findings and recommendations of the Commission. This appeal timely followed.
The School Board challenges the State Board's final order, claiming first that the Board deviated from the record below and improperly created its own record during the appeal process. Specifically, the School Board argues that the School Board and Academies were bound by the record developed before the School Board and thus it was error for the parties to add new evidence during the appeal process. We reject this argument because both the School Board and Academies presented, without any objection, testimony before the Commission regarding the issues of student assessment/accountability and finance/class size requirements. Additionally, the School Board did not raise any objections to the comments made during the State Board meeting regarding the 25th percentile promotion rate, nor did the School Board raise the argument before the State Board that it now raises on appeal. Accordingly, the School Board failed to preserve this issue for our review.
In a related argument, the School Board claims that the State Board improperly conducted a de novo review of the evidence by accepting testimony at the State Board hearing. Again, this argument was not properly preserved for our review.
The School Board further argues that the State Board's order must be reversed because it fails to include a fact-based justification for the Board's decision. We disagree.
Section 1002.33(6)(e) 1. & 5. of the Florida Statutes (2005) provides:

*284 1002.33. Charter schools
* * *
(6) Application process and review.
Beginning September 1, 2003, applications are subject to the following requirements:
* * *
(e) 1. A Charter School Appeal Commission is established to assist the commissioner and the State Board of Education with a fair and impartial review of appeals by applicants whose charter applications have been denied, whose charter contracts have not been renewed, or. . .
* * *
5. Commission members shall thoroughly review the materials presented to them from the appellant and the sponsor. The commission may request information to clarify the documentation presented to it. In the course of its review, the commission may facilitate the postponement of an appeal in those cases where additional time and communication may negate the need for a formal appeal and both parties agree, in writing, to postpone the appeal to the State Board of Education. A new date certain for the appeal shall then be set based upon the rules and procedures of the State Board of Education. Commission members shall provide a written recommendation to the state board as to whether the appeal should be upheld or denied. A fact-based justification for the recommendation must be included. The chair must ensure that the written recommendation is submitted to the State Board of Education members no later than 7 calendar days prior to the date on which the appeal is to be heard. Both parties in the case shall also be provided a copy of the recommendation.
§ 1002.33(6)(e)1. & 5., Fla. Stat. (2005)(emphasis added). The statute clearly states that the Commission, not the State Board, must include a fact-based justification for its recommendation. Therefore, the failure of the State Board to include a fact-based justification for its decision does not constitute reversible error.[2]
The School Board next challenges the State Board's final order, claiming that the School Board's basis for denying Academies' charter school application constituted good cause because Academies' application was unsound in student assessment/accountability and finance/class size requirements. The School Board claims that, because the Commission found that Academies' application was statutorily deficient in the area of student assessment/accountability, the Commission erred in concluding that this deficiency was not good cause for denial of Academies' application. We disagree.
While Academies admitted at the hearing before the Commission that it had mistakenly omitted a sentence from its application that should have said the school's goal was to be an "A" school, a representative from the School Board also admitted that the application template did not include a requirement that one of the goals include a school grade. Section 1002.33(6)(a) of the Florida Statutes also contains no such requirement, and the *285 Florida charter schools standard application includes no such requirement. Therefore, competent substantial evidence supports the Commission's conclusion that the School Board did not have good cause to deny Academies' application on that basis.
Next, the School Board argues that the Commission erred in concluding that the School Board did not have good cause to deny Academies' application based on statutory deficiencies in Academies' basis for promotion of students. Specifically, the School Board argues that Academies' could not promote students based on reaching the 25th percentile. This issue was extensively discussed at the meeting before the Commission. Academies indicated that it was willing to correct this language. Academies' willingness to rectify the situation appeared to be the reason that the Commission concluded that this error on Academies' application was not good cause to deny the application. Based on the testimony and argument presented at the hearing, the Commission had sufficient evidence before it to properly conclude that, although Academies' application was statutorily deficient, such a deficiency was not good cause for denial of the application when Academies recognized the problem and was willing to correct it.
The School Board also argues that the Commission erred in concluding that the School Board did not have competent substantial evidence to support its finding that Academies' application was statutorily deficient in the area of finance/class size requirement. We again disagree. The record demonstrates that Academies rebutted the reasons the School Board gave for denying its application, and the evidence demonstrated that many of the School Board's reasons for denial were based on opinion. Also, a School Board representative admitted that Academies' budget was correct if it could achieve its estimated enrollment number.
Finally, the School Board challenges the State Board's final order, claiming that the order which was entered pursuant to section 1002.33 of the Florida Statutes conflicts with, and thereby violates, the School Board's constitutional authority under Article IX, section 4(b), of the Florida Constitution, to operate, control and supervise public schools, and its authority under Article IX, section 1(a), of the Florida Constitution, to make adequate provision for a uniform and high quality system of free public schools. Specifically, the School Board argues that, because the act of operating and controlling all free public schools in Volusia County is conferred exclusively on the School Board, section 1002.33(6)(c) is unconstitutional because it permits the State Board to open a charter school.
Section 1002.33(6)(c) of the Florida Statutes provides:
1002.33 Charter Schools
* * *
(6) Application process and review.-Beginning September 1, 2003, applications are subject to the following requirements:
* * *
(c) An applicant may appeal any denial of that applicant's application or failure to act on an application to the State Board of Education no later than 30 calendar days after receipt of the district school board's decision or failure to act and shall notify the district school board of its appeal. Any response of the district school board shall be submitted to the State Board of Education within 30 calendar days after notification of the appeal. Upon receipt of notification from the State Board of Education that a charter school applicant is filing *286 an appeal, the Commissioner of Education shall convene a meeting of the Charter School Appeal Commission to study and make recommendations to the State Board of Education regarding its pending decision about the appeal. The commission shall forward its recommendation to the state board no later than 7 calendar days prior to the date on which the appeal is to be heard. The State Board of Education shall by majority vote accept or reject the decision of the district school board no later than 90 calendar days after an appeal is filed in accordance with State Board of Education rule. The Charter School Appeal Commission may reject an appeal submission for failure to comply with procedural rules governing the appeals process. The rejection shall describe the submission errors. The appellant may have up to 15 calendar days from notice of rejection to resubmit an appeal that meets requirements of State Board of Education rule. An application for appeal submitted subsequent to such rejection shall be considered timely if the original appeal was filed within 30 calendar days after receipt of notice of the specific reasons for the district school board's denial of the charter application. The State Board of Education shall remand the application to the district school board with its written decision that the district school board approve or deny the application. The district school board shall implement the decision of the State Board of Education. The decision of the State Board of Education is not subject to the provisions of the Administrative Procedure Act, chapter 120.
§ 1002.33(6)(c), Fla. Stat. (2005).
Article IX, Section 1(a) of the Florida Constitution provides:
§ 1. Public education
(a) The education of children is a fundamental value of the people of the State of Florida. It is, therefore, a paramount duty of the state to make adequate provision for the education of all children residing within its borders. Adequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality system of free public schools that allows students to obtain a high quality education and for the establishment, maintenance, and operation of institutions of higher learning and other public education programs that the needs of the people require. . . .
Article IX, section 4(b) of the Florida Constitution provides:
§ 4. School districts; school boards
* * *
(b) The school board shall operate, control and supervise all free public schools within the school district and determine the rate of school district taxes within the limits prescribed herein. Two or more school districts may operate and finance joint educational programs.
Article IX, section 2 of the Florida Constitution provides:
§ 2. State board of education
The state board of education shall be a body corporate and have such supervision of the system of free public education as is provided by law. The state board of education shall consist of seven members appointed by the governor to staggered 4-year terms, subject to confirmation by the senate. The state board of education shall appoint the commissioner of education.
Section 1002.33(6)(c) does not permit the State Board to open a charter school. Rather, the statute permits the State Board to approve or deny a charter application after it completes an extensive review process. Granting a charter application *287 is not equivalent to opening a public school. The approval of an application is just the beginning of the process to open a charter school. Once the charter application has been granted, the school board still has control over the process because the applicant and the school board must agree on the provisions of the charter. See § 1002.33(6)(h), Fla. Stat. (2005). A school board can also cause a charter to be revoked or not renewed. See § 1002.33(8), Fla. Stat. (2005). Furthermore, under the Constitution of Florida, while the school board shall operate, control and supervise all free public schools within their district the State Board of Education has supervision over the system of free public education as provided by law.
AFFIRMED.
SAWAYA, J., concurs.
GRIFFIN, J., concurs specially, with opinion.
GRIFFIN, J., concurring specially.
For what it is worth, in my view, the School Board acted appropriately in denying the application. This was the fourth time that Academies had submitted its application for this charter school. In the previous application, the minimum standard Academies identified for assessment of the school itself was not to receive an "F" from the State's grading system for two consecutive years. The County found such a standard unacceptable so, in this fourth application, Academies simply eliminated any measure for the school. As for the 25th percentile threshold for individual student evaluation, the application says that it would be acceptable if students scored at or above the 25th percentile on norm reference tests. This is clearly not an acceptable standard for several reasons that were discussed in the hearing. Academies' response was that their standard appeared to be unacceptable due to an inadvertently omitted sentence and poor wording, but in fact, they intended to have a standard that would not be unacceptable. The Board concluded that it could only act on the application that had been submitted, not the application that might be submitted if errors were corrected, and accordingly denied the application. Surely, they could not have approved the application in its current form.
Few things in the administrative process are more destructive than the belief on the part of the applicant and the decision-maker that the "review" of administrative action is really nothing more than a "do-over" with more receptive listeners. A fact-finder and decision-maker who knows its decisions will not be accorded respect is less inclined to worry over their accuracy. Nevertheless, for reasons best known to others, this is apparently the way this process has been designed to operate. Therefore, I concur in the result.
NOTES
[1] Section 1002.33(6)(b)3 of the Florida Statutes provides:

1002.33 Charter Schools
* * *
(6) Application process and review.Beginning September 1, 2003, applications are subject to the following requirements:
* * *
[b] 3. A district school board shall by a majority vote approve or deny an application no later than 60 calendar days after the application is received, unless the district school board and the applicant mutually agree to temporarily postpone the vote to a specific date, at which time the district school board shall by a majority vote approve or deny the application. If the district school board fails to act on the application, an applicant may appeal to the State Board of Education as provided in paragraph (c). If an application is denied, the district school board shall, within 10 calendar days, articulate in writing the specific reasons based upon good cause supporting its denial of the charter application.
§ 1002.33(6)(b)3, Fla. Stat. (2005)(emphasis added). Interestingly, the requirement for "good cause" has been dropped from the most recent version of the statute which provides:
1002.33 Charter Schools
* * *
[6][b]3. A district school board shall by a majority vote approve or deny an application no later than 60 calendar days after the application is received, unless the district school board and the applicant mutually agree in writing to temporarily postpone the vote to a specific date, at which time the district school board shall by a majority vote approve or deny the application. If the district school board fails to act on the application, an applicant may appeal to the State Board of Education as provided in paragraph (c). If an application is denied, the district school board shall, within 10 calendar days, articulate in writing the specific reasons for its denial of the charter application and shall provide the letter of denial and supporting documentation to the applicant and to the Department of Education supporting those reasons.
§ 1002.33(6)(b)3, Fla. Stat. (2006).
[2] To the extent the School Board argues that the Commission's order is insufficient for failure to include detailed factual findings, the School Board failed to preserve this argument because it failed to raise the insufficiency of the Commission's recommendations before the State Board. See Imhotep-Nguzo Saba Charter School v. Department of Educ., 947 So.2d 1279 (Fla. 4th DCA 2007)(holding appellate court would not consider issue raised by charter schools for first time on appeal).